IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:12-CV-8-BO

| | | |
|---|---|---|
| MARY F. JACKSON-HEARD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ELIZABETH CITY STATE UNIVERSITY | ) | |
| and DAVID BEJOU, | ) | |
|     Defendants. | ) | |

This cause comes before the Court on defendants' motions for summary judgment and for payment of expert fee. Plaintiff has responded, defendants have replied, and the matters are ripe for ruling. For the reasons discussed below, defendants' motion for summary judgment is granted and motion for payment of expert fee is denied.

## BACKGROUND

Plaintiff is an African-American female who received her doctorate in accounting from New York University and has taught accounting since 1971. Plaintiff was hired by Elizabeth City State University (ECSU) in 2005, when she was sixty-one years old, as an associate professor of accounting under a probationary appointment as defined by ECSU's Tenure Policies and Regulations [DE 31-14].

Under the policies related to tenure track positions, plaintiff had four years to apply for tenure, or not be reappointed [DE 31-15 at 3]. The policies further provide that additional time may be granted to allow a professor to apply for tenure or arrangements may be made to place the professor in a non-tenure track position if tenure is not secured or applied for within the four-year

period. Plaintiff admits that she never had any intention to seek tenure status. Pl's Dep. at 32. When plaintiff failed to apply for tenure, the department chair and acting dean both recommended to the provost that plaintiff be given an extension. Kahn Aff. ¶ 13. In May 2009 the provost granted plaintiff a one-year contract extension at the associate professor level to give plaintiff extra time to publish and seek tenure. *Id.* ¶ 14. As part of the extension, plaintiff was explicitly expected to apply for tenure during the 2009-2010 school year. *Id.* ¶ 15; DE 31-19. Plaintiff did not publish or apply for tenure. Pl's Dep. 124. In July 2009, defendant Bejou was hired by ECSU as Interim Dean of the School of Business. Bejou Aff. ¶ 1. As Interim Dean, defendant Bejou reported to the provost, Dr. Kahn. *Id.*

Although the provost recommended that plaintiff not be reappointed following her failure to apply for tenure, plaintiff was offered a one-year terminal contract in May 2010 due to lack of proper notice of non-reappointment under ECSU's tenure policy [DE 31-20]. Plaintiff accepted the one-year terminal contract offer [DE 31-21], and was provided with a faculty employment contract which appointment would end on May 13, 2011 [DE 31-22]. Plaintiff's employment with ECSU did in fact end on May 13, 2011. Khan Aff. ¶ 23.

Plaintiff filed this action on February 15, 2012, contending that ECSU and defendant Bejou terminated her employment and discriminated against her based on her age, sex, and race. Plaintiff alleged claims under Title VII, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1) *et seq.*, and 42 U.S.C. § 1981.

## DISCUSSION

### MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may not be granted unless there are no genuine issues of

2

material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]here must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]," *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986), but "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of his case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citation omitted).

## Title VII

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against their employees based on, *inter alia*, race and sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may pursue a Title VII claim through either a mixed-motive framework or through a pretext framework by satisfying the *McDonnell-Douglas* burden shifting analysis. Regardless of which framework is analyzed, "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

Under a mixed-motive framework, a plaintiff may present direct or circumstantial evidence to show that race or sex discrimination was a motivating factor in the employer's

3

adverse employment decision. *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004). The proof must be sufficient such that a reasonable jury could conclude that race or sex was the motivating factor for the employment practice. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101 (2003). Plaintiff has failed to identify any direct evidence of discrimination sufficient for a jury to conclude that her race or sex was the motivating factor in her non-reappointment. Plaintiff has admitted that she does not have evidence of any discriminatory intent on behalf of the provost, Dr. Kahn, or defendant Bejou. Pl's Dep. 70-73. Plaintiff's personal belief of animus is also insufficient circumstantial evidence of race or sex discrimination. *See Bryant v. Bell Atlantic Md., Inc.,* 288 F.3d 124, 135 (4th Cir. 2002) (subjective evidence is insufficient to show discriminatory conduct). The Court therefore proceeds to consider plaintiff's Title VII claims under the *McDonnell-Douglas* burden shifting analysis.

Under the *McDonnell-Douglas* burden shifting analysis applied in a pretext framework in the context of higher education, a plaintiff must first establish a prima facie case of discrimination by demonstrating that she belongs to a protected class, that she sought and was qualified for reappointment or promotion, that she was not reappointed or promoted, and, in the case of reappointment, that the university sought applicants with similar qualifications, or, in the case of promotion, the university had promoted other persons with similar qualifications at about the same time. *Smith v. Univ. North Carolina,* 632 F.2d 316, 340 (4th Cir. 1980).

Once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate and nondiscriminatory basis for its decision. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). Thereupon, the burden shifts back to the plaintiff to prove that the offered legitimate basis is merely pretext. *Id.* The university may then

4

attempt to rebut plaintiff's assertion of pretext, but "the ultimate burden of persuasion never leaves the plaintiff's shoulders." *Id.* (citing *Sweeney v. Bd. of Trs. of Keene State College*, 604 F.2d 106, 108 (1st Cir. 1979)).

Plaintiff has failed to establish a prima facie case of race or sex discrimination. While it is undisputed that plaintiff is a member of protected classes, plaintiff has failed to demonstrate that she sought and was qualified for reappointment. Regarding her initial tenure-track position, plaintiff has admitted that she did not nor did she intend to seek an award of tenure. Plaintiff's final contract with ECSU was a terminal contract, which expressly stated that it was a fixed-term appointment and provided for "full and timely notice of non-reappointment at the expiration of the term." [DE 31-14 at 5].

Plaintiff appears to argue that, at the expiration of her fixed-term contract, she should have been offered a position as a visiting associate professor. In support of this claim, as well as in support of her overall theory of discriminatory motive, plaintiff relies heavily on ECSU's process for seeking accreditation from the Association for the Advancement of Collegiate Schools of Business (AACSB), an effort that defendant Bejou was hired to lead. Bejou Aff. ¶ 4. During that process, defendant Bejou and two independent consultants reviewed ECSU's business school faculty credentials to help determine which faculty members were "academically qualified" (AQ) and or "professionally qualified" (PQ) as those terms are defined by the AACSB and related ECSU policies; faculty who were not determined to be AQ or PQ were denominated as "other." *Id.* Under AACSB standards, at least 50% of faculty should qualify as AQ and at least 90% should qualify as AQ or PQ. *Id.* Both independent consultants and defendant Bejou ranked plaintiff as "other" for purposes of the AACSB submission. *Id.* ¶ 12.

5

Plaintiff's expert, Dr. Mazze, would contend that plaintiff is both AQ and PQ under the AACSB standards [DE 36-15]. Plaintiff argues that in designating plaintiff as "other," defendant Bejou "sealed her fate" by classifying her as unqualified. Plaintiff's AQ or PQ status is not, however, germane; plaintiff was offered and accepted a one-year fixed term contract, plaintiff has presented no evidence that she applied for or otherwise sought another position at ECSU, and plaintiff's burden as to her prima facie race and sex discrimination case has therefore not been satisfied. Moreover, even assuming that plaintiff's ranking as "other" played a role in ECSU's decision not to offer plaintiff another contract at the expiration of her fixed-term contract, plaintiff's own expert has stated that, pursuant to AACSB guidance, ECSU set its own policy to determine AQ and PQ status, and that plaintiff did not meet at least one of ECSU's requirements. Mazze Dep. at 12; 109.

Even if plaintiff had satisfied her prima facie burden, plaintiff has failed to sufficiently demonstrate that defendants' proffered legitimate reason was mere pretext. Plaintiff's contention that Provost Kahn was merely a "cat's paw" in defendant Bejou's quest to remove plaintiff from ECSU faculty is unsupported and based only upon mere conjecture. *See* Kahn Aff. ¶ 17 (had defendant Bejou recommended plaintiff for reappointment at associate professor level in 2010 Kahn could not and would not have accepted recommendation); Kahn Dep. at 46; 50 (provost's decision to recommend non-reappointment for plaintiff; plaintiff did not apply for tenure and was not reappointed as a result); *see also Marlow v. Chesterfield Cnty School Bd.*, 749 F. Supp.2d 417, 430 (E.D.Va. 2010) (evidence sufficient to preclude summary judgment on "cat's paw" theory where the record indicated that school board accepted *every* recommendation submitted). Plaintiff's speculative allegations, as well as the declaration of Paulette Edmunds, whose

6

testimony relates to her own application for tenure and is based on her personal belief [DE 36-26], simply do not suffice. *Thompson*, 312 F.3d at 649.

In light of the foregoing, plaintiff has not established a prima facie case under Title VII as plaintiff did not seek reappointment nor did she suffer adverse employment action as her fixed-term contract was not rescinded but merely expired.[1] Nor has plaintiff come forward with sufficient evidence to create a disputed issue of fact as to whether ECSU's proffered legitimate basis for not offering her another contract was mere pretext. Defendants are therefore entitled to summary judgment in their favor on plaintiff's Title VII claim.

## ADEA

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of [that] individual's age." 29 U.S.C. § 623 (a)(1). To succeed on an ADEA claim, a plaintiff must show that age was the but-for cause of her employer's decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). To do so, a plaintiff may either come forward with direct evidence or come forward with circumstantial evidence and satisfy the *McDonnell Douglas* burden-shifting analysis. *See E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 163 (4th Cir. 2004).[2]

Again, plaintiff has failed to come forward with any direct evidence of age discrimination,

---

[1] Even considering plaintiff's Title VII claim under the more generally applicable *McDonnell-Douglas* burden shifting analysis, as opposed to one that is tailored to the context of higher education, plaintiff still has not demonstrated a prima facie case of discrimination. Plaintiff would need to show that she is a member of a protected class, that she suffered adverse employment action, that at the time of the adverse action she was performing her duties at a level that met her employer's legitimate expectations, and that the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill*, 354 F.3d at 285. Plaintiff can point to no adverse employment action in light of her one-year fixed term contract.

[2] *See supra* note 1 discussing elements of *McDonnell-Douglas* prima facie case.

Pl's Dep. at 71-75, and she has further failed to make a prima facie showing under the burden-shifting analysis. It is undisputed that plaintiff is within the protected class, forty-years old or older, *see Bodkin v. Town of Strasburg*, 386 Fed. App'x 411, 413-14 (4th Cir. 2010), but plaintiff has failed to demonstrate the she suffered adverse employment action as the record demonstrates that plaintiff was subject to a fixed-term contract that ended. Even assuming, *arguendo*, that ECSU's failure to offer plaintiff another contract somehow constitutes an adverse employment action and that plaintiff was performing her duties at a level that met ECSU's legitimate expectations, she has not demonstrated that her position has remained open or that it was filled by similarly qualified applicants outside the protected class. The persons plaintiff alleges "replaced" her were fifty-five and forty-seven years old during academic year 2009-10. James-Whidbee Aff. ¶ 3. Summary judgment for defendants is therefore appropriate on plaintiff's ADEA claim.

## Section 1981

Plaintiff contends that defendant Bejou is individually liable for discriminating against her based on her race in violation of 42 U.S.C. § 1981, which provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." The state universities of North Carolina are alter egos of the state. *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1139 n. 6 (4th Cir. 1990). An employee of the state is deemed to be a state actor when there is a "sufficiently close nexus" between the state and the challenged actor such that the action of the employee "may fairly be treated as that of the [s]tate itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Here, all of defendant Bejou's actions relating to plaintiff's employment were taken as part of his duties as Interim Dean of the School of Business, and thus can fairly be

treated as action of the state itself, even in light of a claim against defendant Bejou in his individual as opposed to official capacity. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

"In a suit brought against a state actor, Section 1983 is the exclusive federal remedy for a violation of the rights guaranteed in § 1981." *Lewis v. Robeson Cnty.*, 63 F. App'x 134, 138 (4th Cir. 2003). Plaintiff's claim under § 1981 thus fails as a matter of law. Moreover, as discussed above, plaintiff has failed to sufficiently establish that she suffered adverse employment action or was discriminated against on the basis of her race, and so such claim, even if properly alleged, would still fail.

## MOTION FOR PAYMENT OF EXPERT FEES

Defendants seek an order requiring plaintiff to pay defense expert Dr. Ralph Byington's bill in the amount of $1200 for his time spent being deposed by plaintiff's counsel. Plaintiff's counsel has paid $400 of Dr. Byington's bill, for one hour of three hours spent in deposition, plus a $40 fact witness fee. Dr. Byington served as an expert witness for defendants but was also one of two outside consultants hired by defendant Bejou relating to AACSB accreditation.

Because "an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit" should be treated as ordinary witnesses, Fed. R. Civ. P. 26 cmt. Subdivision (b)(4) – Trial Preparation: Experts, defendants' motion for payment of expert fee is denied. Plaintiff's request that she be reimbursed the $400 paid to Dr. Byington and for attorney's fees relating to the instant motion is also denied.

## CONCLUSION

Accordingly, for the reasons discussed above, defendants' motion for summary judgment [DE 31] is GRANTED and defendants' motion for payment of expert fee [DE 32] is DENIED.

9

The clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this 12 day of September, 2013.

　　　　　　　　　　　　　　　　　Terrence W. Boyle
　　　　　　　　　　　　　　　　　TERRENCE W. BOYLE
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

10